Good afternoon, Your Honors. My name is Jeff Butler, and I am here on behalf of the Ojibwa Tribes and the Health Department. I've learned this afternoon, if nothing else, that I may not get very far if I have some opening comments. I suggest that we are going to get to the points of my opening comments if I just take your questions. I think the important part is that we answer your questions, so you can make your decision here. So I'm happy to start there, or I can start with my comments if you'd like. Well, let me ask you this, Counsel. Let's assume that exclusivity is something that's in the contract that the state's obligated to do. What kind of relief do you want us to order that doesn't infringe on the state's exercise of its police powers? Well, there's no relief at this point, Your Honor, because we're simply at the but in terms of the police powers, I don't think that they're impacted at all. I mean, that's the whole point. If you look at all of the cases that go along that caught a line of cases. Aren't you asking? I mean, I thought the point of this case was that you wanted a court order telling the state of California that it needs to take action against card rooms that you believe are violating exclusivity. So why wouldn't that be an exercise of the state's police powers? Well, but the violation of the state's police powers is at least the way the cases frame that issue isn't having the state enforce its laws. And there's nothing wrong with having, at least as I read the police power cases, there's nothing wrong with having the state say, you know, you've got to fight. We've got to enforce our own laws. That's all we're asking them to do. That doesn't involve. But you know, you're asking you're asking that a court order them to enforce their own laws. Rule 12B6 says a court can dismiss a claim if it doesn't state a claim for relief upon which relief can be granted. But really, I would understand if you're trying to get out of the compacts. But you're not. I mean, if you said there's a breach of the compact, we'd like out of it or we have we're seeking damages against the state or something like that. But what you want, the only thing you seem to want is for a court to order them to shut down the illegal banked card games. And isn't that us ordering the state to exercise its police powers? Well, it's again, I don't know enough about the definition of police powers to know that that is it. I know that the definition of police powers, as it's enunciated in the court cases, have no problem. But the problem here is that you want the benefit of the exclusivity that you think is a part of the of the compacts. And the way to do that, you're saying is order the state to basically prosecute illegal card rooms, basically to basically crack down on these other folks so that we get the benefit of exclusivity. But that's the police powers that we're ordering the state to exercise. And that's the power that really can't contract away. That's the problem. I will tell you, though, Your Honor, that I've read all the police bar cases, and I don't think that that's the way they read, because in those cases, the state obligates itself to do all sorts of things where the problem comes in is when the state is then not allowed to change its police powers. Look at the complaint, if you will, you will see that the state in this case has on many occasions admitted that it is flat out allowing illegal gaming. It does it in the way of, for example, blackjack. It has allowed blackjack to be played, and they've admitted they made a mistake. They shouldn't have done it. What in the contract? I mean, maybe you could set the police powers inside. What in the contract and the compact gives your clients the ability to ask for this type of relief under the contract? I mean, there's a reference to exclusivity as part of the understanding of the parties, but it's a totally different thing to then come and say, as a breach of this contract, we can then come in and ask for the type of relief we're asking for. Well, but what we're talking about here, Your Honor, I mean, there's clearly the exclusivity that's provided to the tribes via the Constitution, which then can only be available. They can only advantage of it. They can only avail themselves of that exclusivity through getting a compact. In the compact, the state clearly said, you know, we are giving their exclusivity. This court, as well as the Rincon Valley cases, that that exclusivity was extremely valuable, and that it was something that the tribes bargained for and negotiated for. If you at the district court, it even acknowledged that. No, I have no doubt that it's valuable. I have no doubt that it's consideration. Let's put aside for a second what the promise was in the contract, but I'm still stuck with the notion that what you really want us to do is order them to send out their agents to shut down the other, the competing card games, right? That's the relief you seek. No, no. What we want them to do is to, we want them to follow, to really follow their own laws, to enforce their own laws. No, that's a general statement. What do you want them to do in specific? So let's assume the other side says, oh, we always enforce our own laws. What you're saying is, no, you don't. You haven't shut down these illegal card games that compete with us, and you ought to be doing that. Isn't that what you're saying? Let me give you an answer with respect to a specific game. For example, on August 30 of 2018, I met with the director of the Bureau of Gambling Control, which is the one in charge of this, Stephanie Shimazo. It wasn't just me. It was a lot of tribes. She said, yes, we made a mistake. We have allowed the card rooms to play two games in particular, and those games are Blackjack, 21st century Blackjack, and another game that's, again, just another Blackjack game. And it was called 21.5 Blackjack. We made a mistake. We're going to do something about that. Two years later, more than two years later, they still haven't done anything about that. No, I don't doubt that they haven't done what you wanted. And indeed, the state should probably be criticized if they haven't done what you wanted. But I'm starting to figure out what relief we can give you. Let me focus on the compact for a second. The compact says, if you allow slot machines elsewhere, we get a specific form of relief. We have to pay less, etc. But with respect to exclusivity, there is no form of relief in the compacts. So what you're really asking us to do is to read into the compact a provision that you have the right to get them to enforce the state laws against others, aren't you? No, Your Honor. I realize that once discovery happens and we can delineate what it is that the state is not doing in terms of its obligations, there can be some remedy fashioned. I'm assuming that your complaint is accurate because we're at the motion to dismiss stage. I'm assuming the state is doing nothing to shut down illegal card games. I know they want to tell us to the contrary, but we're at the motion to dismiss stage. So let's assume they're doing nothing. That they signed these contracts and they've decided instead to use all their resources to shut down illegal horse tracks or illegal dog tracks or whatever else they do with their time. There's a question. What's bothering the three of us, at least bothering me, is what can we do about that? We could award you damages. We could find that they've breached the contract and you can rescind it. But can we order them to shut down these illegal card games? That's the question we're asking. Tell us why we can do that. Your Honor, I think that the court, and again, it would be the district court doing that, might end up here again, but can say, for example, you have admitted state that you are not stopping this illegal gaming, which is affecting the contractual agreement you made with the tribes. And that is what you must change. But I mean, what we have here, though, is we have no other recourse, Your Honor. You said that you could grant damages. No, you can't. Because in the compacts, the state and the tribes as well did not agree to a damages remedy. If you look at section 13.0 of the compacts, they provide for specific performance, declaratory relief, or injunctive relief, but there's no way. Which way does that cut, I guess? I mean, there is a whole provision, section 4.8, at least in the contract that I'm looking at, about exclusivity, but it deals with gaming devices. So there the parties were able to have some agreement on certain types of remedies in the context of gaming devices, but not so with respect to the card games. So doesn't that cut against you? No, it doesn't in any way, shape, or form. And then there's two things I like to say about that, Your Honor, and they're this. One, not every contract is, I think I like to say it the other way. Hardly any contract specifies a remedy for exactly every single provision of that contract. So it's not like in every contract, you have a provision just below it. After every provision, there's another one that says, if you violate this one, this is what's going to happen. So I don't think that the fact that we have a non, there's no specific remedy with respect to the gaming issue. This is the card gaming issue, rather than the slot machine issue is different. Mr. Bonner, can I, I'm sorry, we spoke over each other. So finish your answer first. Well, there's only one other point that I wanted to mention, Your Honor. Let me go to another point that I wanted to ask you about something else. The state says, look, this contract compact, which is a contract doesn't provide doesn't promise exclusivity, it merely states a legal fact, which is that you're the only people to whom we can grant the legal right to do this. Anybody else who does it, we will not give anybody else the legal right to do this. And but but we can't, we're not promising you anything about what the level of our enforcement will be against illegality. So I think about if I got a license from the state of California to sell marijuana, I'm not sure I would regard and it said, you know, people with this license have the exclusive right to sell marijuana. And in your case, it's tribes that have the exclusive right to conduct these these games. I'm not sure I would view that as a promise that they go out and arrest the guys who were doing who were selling marijuana illegally. So why should I read this? Why should I read this as a promise to ensure your exclusivity except by not granting the legal right to anybody else to create these games? But Your Honor, who the state is the only entity that has the power to protect the exclusivity into which they negotiate? No, I'm asking a different question. I'm saying did it promise to protect your exclusivity by preventing illegal games? Or did it promise to protect your exclusivity by not granting this right to anybody but Indian tribes? I think it promised to I think both actually, but certainly to protect the exclusivity in terms of illegal games that the state itself is fostering and promoting. You want to save the remaining three minutes for rebuttal? I would. Yes. Thank you, Your Honor. Let's hear from the state. Good afternoon, Your Honors. May it please the court. Jennifer Henderson for the state of California. And I just wanted to point out that the dispositive issue here really is whether the compacts contain any provision that creates a contractual duty for the state to exercise its police powers by way of its prosecutorial discretion to enforce its gambling laws or to enforce them in a particular manner. Does the state have, and I'm sorry to interrupt you, does the state have any duties under the contract with respect to this exclusivity? Is there anything it must do or not do under the contract? Your Honor, you pointed to previously the provision that discusses or deals with if the state were to change its laws in the future such that other parties could operate slot machines or gaming devices, then the recourse available to the tribes under the compact would be to sit down with the state and renegotiate the revenue sharing provisions. But no, the preamble language that the tribes point to as the source of the obligation of the state just recognizes the value of the constitutional amendment that created the exclusive right for tribes in California to offer casinos-type gambling. It didn't and it couldn't have obligated the state to protect, to take certain actions to protect the law. And I think if the tribes had come in here and said rather than ask you for this court order that would require the state to undertake enforcement, if they said instead we want reformation of this contract, we want to be able to pay better rates on card games that remedy that they're entitled to in a court under the contract. Your Honor, they didn't speak that. I think that the other thing to point out here is that the revenue is not tied to banked games at all. Under the compacts, only the operation of the gaming devices or the slot machines are what counts for the revenue. Is there any monetary type you believe they could seek under the compact if their claim is that your client is not properly enforcing the exclusive fee? No, Your Honor. Mr. Butler was correct. Under section 13, it is not allowed for the parties to seek damages and a breach of compact claim under the compacts. Well, but so I want to I want to test and I think I know the answer to this, the limits of your position. You sit down with the tribes and you say, you know, we can enter into compacts now under which you'll pay us some stuff. And this is a good deal because you're the only people who can do this. And let's assume that thereafter you say we've got that done. Now that we've got that done, let's let's ask other people to conduct these games. Let's encourage them. Let's do all the things we might. You know, let's not enforce the law at all. Let's put out an announcement that we're out of the business of enforcing the law on this on illegal banked card games. Doesn't that somehow breach the covenant of good faith and fair dealing? Well, Your Honor, I think the problem there is first, there would have to be an affirmative obligation for the state to execute its its police powers or its discretion in a certain way here that the appellate tribes seem to they're just unhappy with how the state is enforcing the law. And I must take issue with the fact and the claim that we're not enforcing the law or that we've admitted. I understand, but we're at the motion to dismiss. Okay, so I think that the problem is if you look at again, going back to the provision, let me back up a little bit. Explicitly is not required for the tribes to be able to gain under IGRA. It was just required in California because no one could offer these types of games, right? Because the constitutional provision only exempted them. Correct. So I'm a vet. I'm a veteran of IGRA. So I understand. All right. Well, and so if it was in the future that there was another constitutional amendment and it opened up the casino-type gaming to everyone, that wouldn't make the compacts void. It would just mean that at least for the gaming device operation, that it would allow the tribes to give them an option, a recourse to come to the state and say, now other people are doing this. And because we, we are paying based on the fact that we were the only people to do it, we'd like to renegotiate those payment terms. Let me change, let me change the compact terms a little bit on you. And this is a hypothetical. So your first answer doesn't have to be, that's not what the compact says. Let's assume the compact said, we promise you exclusivity and, or let's assume it said, we promise you exclusivity and we promise to shut down all illegal gaming enterprises in the state. And you had not done so. Could they come to a court and enforce that promise in the compact? That promise would run afoul of the state's, the constitutional bar for the state to promise to be a valid term. Is that because a federal court lacks the power to order you to do that? Or is it because any court lacks the power? Could a state court order you to comply with that contract? I would say any court, it has to be spelled out specifically in the compact in the first place, your honor. We have to say, that was my hypothetical. Yeah, correct. And here we're is the tribe's interpretation of that law. And I think, but I understand, let's assume for a moment their interpretation is correct. That's another way of stating the hypothetical. So I'm just trying to figure out if it was clear that you made a promise to enforce the laws, could a court order you to adhere to that promise? Your honor, I don't think, I don't think that promise would be a valid promise. I mean, and if you look at the recourse that the state and the tribes agree to in terms of the banked gains, that looks, and it's also the same in Arizona compacts, it's if the law changes such that you are no longer the only parties that can do this, here's what we agree to do. It's not in terms of we promise we will always enforce the law X way. Just to follow up on Judge reported to give away this right, in a sense it would be invalid because it's not a right the state could give up. Is that what you're saying? Correct, your honor, because if we agree to enforce the law in this situation, just let's say under Judge Hurwitz's example, that we agreed for whatever reason that we said we will enforce it in X way. But then three months from now, the state passes another proposition, it amends the law, and now other people can do it. And if the state were forced to enforce the law in the way they promised would make them be violating that future law, then you've created the exact problem that the police powers. But now you're expanding, now you're expanding on my hypothetical. Use everything you've said except the new law in the will shut down illegal card rooms whenever we discover them. And you then breach that promise. Can we order you to perform that promise? That's the essential question in my mind. Your honor, I think that I think the hurdle here is that there would have to be how would that specifically go? I think the case the facts here show that there is there's just a very big disagreement between the tribes and other parties. I think I think that's why Judge Hurwitz, I think that's why Judge Hurwitz changed the facts on you and gave you a hypothetical. So let me let me try. Let me try to state it a different way. Is it the state's position that even if the compacts guaranteed or provided as a contractual term exclusivity to the tribes, there can never be a bad faith, a breach of covenant, implied covenant of good faith and good feeling. There could never be a breach, even if the state fails to enforce the term at all, because that would impinge on the on the state's police powers. They could never under under the best case scenario, bring a bad faith claim against the state. No, your honor, I believe that if it were a different provision, for example, if there was a provision that said that every year the state will provide a report showing that it did X, Y or Z, and it didn't do that, and that report was necessary, then the tribes, of course, would have recourse under Section 13 to bring an action under the compact and say you have the specific duty state. Right, I'm talking about, I guess, let me try it one more time. Assuming that there is a contractual term that basically guarantees exclusivity, and the state completely fails to enforce the laws by cracking down on illegal card states, can there ever be a bad faith or breach of implied covenant of good faith and fair dealing claim brought by the plaintiffs? Whereas the state's answer, I take it, is no, there can never be such a claim because that basically hinges on the state's powers. Am I understanding your position? I think our position is, your honor, that there could be no such provision. It would be an invalid, it would be unconstitutional for the state to promise to enforce the law in any particular way in the compacts or in a contract. And for that reason, they didn't so promise. And I think it's important to point out that the appellants and their reply brief have now stated that their point is that the compacts do not require enforcement of the state's gaming laws in perpetuity or in any particular manner, just as they exist today and based on the state's own interpretation. The page seven in their reply brief. And given the statement, it's even less clear what they want the court to order the state to do. The state is doing exactly that. The state is enforcing its laws at its own interpretation, which Hurwitz brings up a good point. There are, for prosecutorial discretion, there are decisions to be made on the part of the state about when and how to enforce the law. For instance, with the COVID-19 emergency that we're facing, we have reduced staff. We may have to make decisions to do, to make decisions about how we're going to enforce it. And if there was an order from the court, it's telling the state to do something. How exactly would that order go? How would it not take away the state's prosecutorial discretion to develop its regulations and to enforce them? And I think that's the fatal flaw in, in their claim that there is any contractual duty and in the, in the compacts on the part of the state. They also don't explain your honors why if they were on notice and complained to the state as early as 2011 about how the state was failing to enforce the law such that it is impinging their exclusive rights, that when they sat down to negotiate with their new compacts in 2015 and 2016, they didn't address this at all. There's, there's no specific provision in the compact that says, here's what we want in terms of bank gains and our exclusive rights stop with them. And there's no recourse spelled out in terms of what would happen if it wasn't protected as they say it should be. And I think that that's very telling. If it was something that they thought the state had an obligation to do and they were already unhappy about it, there's never been an explanation of why it wasn't addressed in their renewed compacts. And I think that it's also important to point out that the consideration for the deal that the, that the state and the tribes made wasn't just about the exclusive right to offer class three compacts talked about the other meaningful sessions offered by the state. So I think that first of all, there, there is no provision in the compact that creates contractual duties for the state to enforce the law in a particular way. And this way it would be a way the tribes want the state to enforce it. And I think the amici have filed briefs that point out that it's not, it's not settled with what anyone would say the exact way the law should be enforced is. And really without a compact hook, this is really an attempt by the tribes to force the state in the guise of a compact claim to enforce the law in a particular way. And I think that there is no, there is no provision. There is no, it would violate police powers and the state's discretion if there was one. And I think the tribes haven't been able to language that creates that duty. They haven't been able to explain why it wasn't addressed more simply in the compacts that were negotiated after they have started to point out that the state's alleged failures and an order mandating essentially that the state enforced its laws would obviously interfere with the state's proctorial discretion to decide under California law what charges to bring and how to pursue individual cases. So for this reason, we ask the court to affirm the district court's dismissal of the complaint. And if there are no other questions from the panel, I would submit. Thank you, counsel. Ms. Butler, I think you have some additional time. Thank you, your honors. And here's the point I want to make. I mean, whatever happened in the compact negotiation context, I don't think matters here, although I'm happy to I was involved in the negotiation of the OJD compact. And basically, they just told us, yeah, you're not going to get that. So if you want to compact, you're not going to get that. But the whole point I want to make here isn't that we're trying to say issue an order enforcing your laws. I realize that that wouldn't be all that good. Look at what we say in the complaint. They admit that they are allowing violations of the laws. And that's a very different thing. Because if you want, your honor, you said it. I mean, essentially, if you get into that compact, they say, yes, even the terms of the preamble are enforceable, which is where the exclusivity is with respect to gaming generally, not just the slot machine gaming. Yep, we sign that. The ink is just barely dry. And all of a sudden, they come out and say, we're going to let everybody, everybody in California gets to roll the dice and have a slot machine in their living room. I think we would all agree that that would be contrary to what the constitution says, and contrary to what penal code section 330 says. But here's the point. They admit, and you don't have to believe it at this point, because that's something that we'll deal with down the road should we get there. But they admit, and we have it in our complaint, that they are allowing the violations of the law to take place. And they haven't done anything about it to this day. I've been involved in this same issue since April 12, 2012. And they've admitted on several occasions what they've done. We've cited it in the complaint, and nothing has happened. That can't be right. They're the only ones who could protect that. And they're basically saying, yep, that promise was illusory. All right. Thank you very much. Matter submitted for decision. Appreciate the arguments by both councils. Thank you. That was the last case on calendar for argument. So court is adjourned for the week.
judges: Nguyen, Hurwitz, Bress